[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
By a one count complaint dated May 10, 1993, plaintiff Kathryn Hescock Wiersch ("Wiersch") brought suit against the State of Connecticut. Wiersch seeks to recover damages for personal injuries she allegedly sustained in Harkness State Park in Waterford, Connecticut.
According to the allegations contained in the complaint, Wiersch was visiting Harkness State Park on September 19, 1987. As Wiersch walked along a footpath, she stumbled over an open manhole that had a pivoting cover. Because the manhole was obstructed by high grass and other debris, Wiersch claims she could not see it. Upon falling, Wiersch allegedly suffered severe injuries to her left hand and wrist. The complaint goes on to allege that the State of Connecticut had a duty to warn Wiersch of the dangerous condition on the footpath and to keep the park in a reasonably safe condition.
Acting pursuant to Connecticut General Statutes § 4-160, the claims commissioner allowed suit against the state to go forward by a ruling dated April 13, 1993.
By a summary judgment motion dated July 7, 1993, the State of Connecticut asserts that it is entitled to summary judgment as a matter of law. The state claims that it has no duty to safeguard Wiersch from injury pursuant to Connecticut General Statute § 52-557g, more commonly referred to as the Recreational Use Statute.
Wiersch opposes the state's motion for summary judgment and asserts that the State of Connecticut is barred from relying on the Recreational Use Statute to shield itself from CT Page 2106 liability. Wiersch claims that such a defense was automatically waived when the claims commissioner allowed the suit to be brought against the state. Furthermore, Wiersch asserts that there is a material issue of fact in dispute. In particular, Wiersch claims that even if the state is entitled to rely on the statute, the charging of parking fees at Harkness really constitutes an admission fee that would automatically bar the protection afforded by the Recreational Use Statute. See General Statutes § 52-557h, supra, note 2.
Both parties have submitted timely memoranda in support of their respective positions.
DISCUSSION
"Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Although the party seeking summary judgment has the burden of showing the nonexistence of a material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted.) Scinto v. Stamm, 224 Conn. 524, 530, 620 A.2d 99
(1993).
Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under practice book § 380 . . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts in accordance with Practice Book §§ 380 and 381, which contradict those stated in the movant's affidavits and documents." (Citations omitted; internal quotation marks omitted.) State v. Goggin, 208 Conn. 606, 616-617,546 A.2d 250 (1988).
In deciding a motion for summary judgment, the trial CT Page 2107 court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Suarezv. Dickmont Plastics, Corp., 229 Conn. 99, 105-06,639 A.2d 507 (1994).
"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v.Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Citation omitted, internal quotation marks omitted.) State v. Gogin, supra, 208 Conn. 616.
"A `genuine issue' has been variously described as a `triable,' `substantial' or `real' issue of fact . . . and has been defined as one which can be maintained by substantial evidence. Hence, the `genuine issue' aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Citations omitted; internal quotation marks omitted.) United Oil Co. v.Redevelopment Commission, 158 Conn. 364, 378-79, 260 A.2d 596
(1969).
"A `material fact' is simply a fact which will make a difference in the result of the case . . . and a summary disposition should be rendered in the limited instances where the evidence is such that no room for disbelief could exist in the minds of the jury and in circumstances which would require a directed verdict for the moving party." (Citation omitted.)Yanow v. Teal Industries, Inc., 178 Conn. 262, 268-69,422 A.2d 34 (1979). "`Issues of fact' encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." UnitedOil Co. v. Redevelopment Corp., supra, 158 Conn. 379.
1. Can the State Use the Recreational Use Statute?
Connecticut General Statute § 4-160(a) states: CT Page 2108
 When the claims commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable. . . . The state waives its immunity from liability and from suit in each such action and waives all defenses which might arise from the eleemosynary or governmental nature of the activity complained of. The rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances. (Emphasis added).
Because the state cannot be sued without its consent, the claims commissioner's decision to allow a suit to go forward only waives the state's claim of sovereign immunity and other defenses that are governmental in nature. It does not waive all defenses, however, because by the statute's clear language, the state's liabilities and rights are coextensive to those of a private person. Thus the state has whatever defense a private person may have under the law. "[A] statute should be applied as its language directs." Breen v.Department of Liquor Control, 2 Conn. App. 628, 631,481 A.2d 755 (1984).
Connecticut's Recreational Use statute states in part:
 (a) Except as provided in section 52-557h, an owner of land who makes all or any part of the land available to the public without charge, rent, fee or other commercial service for recreational purposes owes no duty of care to keep the land, or the part thereof so made available, safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on the land to persons entering for recreational purposes.
General Statutes § 52-557g.
General Statutes 52-557f(3) defines "`owner' [as] the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." "Courts are bound to accept the legislative definition of terms in a statute." CT Page 2109Toll Gate Farms, Inc. v. Milk Regulation Board, 148 Conn. 341,347, 170 A.2d 883 (1961).
Wiersch asserts that section 4-106 specifically states that if suit is allowed to be brought against the state, the state "waives all defenses which might arise from the eleemosynary or governmental nature of the activity complained of." Wiersch further claims that because the state had no authority to charge an admission to the state parks at the time of the incident, the state cannot be said to be in the same position as a private landowner and must be considered something akin to a charity.[1] Thus, on this reasoning, Wiersch claims that the recreational use statute sets up a type of charitable immunity for private-landowners which cannot be raised by the state under 4-106. Wiersch asserts that such a defense would be eleemosynary in nature.
However, such a theory ignores the plain meaning of the words as set forth in both statutes. General Statutes § 4-106
specifically states that once the claims commissioner allows the suit to go forward, the state may use any defense to liability that is available to a private individual. Thus, since the recreational use statute can be used by private landowners as a defense to liability, it can also be used by the state in this action. To hold otherwise would ignore the plain language of the statute. The statute nowhere prohibits the state from being an `owner' of land, and thus, the court finds that the State of Connecticut, just like a private citizen, may rely on the recreational use statute as a defense in this action.
Furthermore, the Connecticut Supreme court has noted that the purpose of the recreational use statute is to "make land accessible for recreational use by the public. . . ."Scrapchansky v. Plainfield, 226 Conn. 446, 452, 627 A.2d 446
(1993). In the case of Manning v. Barenz, 221 Conn. 256, 260,603 A.2d 399 (1992), the court refused to construe the statute as applicable only to private landowners and held that "[the recreational use statute] applies to all owners of land-municipal and private" (Emphasis added). In a case brought in the federal district court of Connecticut, the court stated, "[a]t the outset, the court notes that the applicability of § 52-557g is not affected because the landowner in this case is the United States government. The principle of encouraging landowners to open up their land by CT Page 2110 limiting potential tort liability applies with equal force to the Government as to other landowners." Jannet v. UnitedStates, 597 F. Sup. 110, 112 (D. Conn. 1984).
The reasoning as set forth in the above cited cases naturally applies to the state as well. Although the state can automatically prevent suit against itself by refusing to waive its sovereign immunity, it does not mean that once such immunity is waived that it is unable to use defenses that the legislature specifically gave to other individuals, including private and municipal landowners. General Statutes § 4-160
states that the state can raise such defenses equal to those available to private parties.
2. Material Issues of Fact and Parking Fees
If an owner of land charges an admission fee to people who enter upon his or her land, the landowner loses the protection of the recreational use statute.[2] Wiersch claims that there is a material issue of fact in dispute, and alleges that the parking fees at Harkness are actually defacto admission fees. In doing so, Wiersch relies on the case ofMazzucco v. Town of Fairfield, 9 CONN. L. RPTR. 488,8 CSCR 1036 (1993) (Lager, J.), In that case, the court found a material issue of fact in dispute as to the nature of "seasonal pass" parking fee as a possible admission fee to a municipal park. The property in question was a town owned beach where, according to one of the affidavits, "there is nowhere to park a car in the vicinity outside of [the beach] so it is necessary to enter [the beach] by way of a vehicle." Id. Relying on this and other conflicting regulations of the town, the court held "[t]here exists a genuine issue of material fact as to whether the fees assessed for seasonal parking permits are simply a charge for the privilege of parking near the beach, which would not constitute a charge within the meaning of the [recreational use statute], or a means by which the Town . . . charges admission for the use of its beach." Id.
The same issue is present in this case. In an affidavit in support of the state's motion for summary judgment, Richard K. Clifford, chief of the Bureau of Outdoor Recreation of the Department of Environmental Management, stated that "Harkness State Park was open to members of the general public for recreational purposes without charge, rent, fee or other commercial service from September 8, 1987 to September 30, CT Page 2111 1987." (Defendant's Exhibit A).
In Clifford's deposition, however, he stated that parking fees collected from the public as they entered Harkness Park "represent direct revenue from access by the public into Harkness Memorial." (Page 6 of Plaintiff's Exhibit 2). Like the Beach at issue in Mazzucco, supra, Clifford also noted that `[i]t is virtually impossible for anybody to walk to Harkness State Park because of it's location." (Page 22 of Plaintiff's Exhibit 2).
Based on the statements of Mr. Clifford made at his deposition and on his affidavit, the court finds that there is a material issue of fact in dispute that may or may not make the Recreational Use Statute applicable to this case.
The court therefore finds that the state can seek protection of the Recreational Use Statute if in fact no admission fee, defacto or otherwise, was paid by Wiersch when she went to Harkness Park. Because there is a material issue of fact in dispute regarding the nature of the parking fee charged, the state's motion for summary judgment must be denied.
CONCLUSION
For the above stated reasons, the state's motion for summary judgment is denied.